UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

DOMENICO ANASTASIO,

        Defendant.

**DECISION AND ORDER**
09-CR-331-A

---

      Defendant Domenico Anastasio was convicted, after a jury trial, of one count of racketeering conspiracy in violation of 18 U.S.C. § 1962(d) and two counts of murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)[1]. The convictions were for conspiracy to participate in organized criminal activities of a violent street gang in Buffalo, New York, and for Defendant Anastasio's accessorial role in the April 17, 2006 racketeering murders of Brandon MacDonald and Darinell Young. Each of the two murder convictions carries a sentence of mandatory life imprisonment. 18 U.S.C. § 1959(a)(1).

      Defendant Anastasio moves pursuant to Fed. R. Crim. P. 29 for a judgment of acquittal notwithstanding the jury's verdicts based primarily upon his argument that there was insufficient evidence for a rational jury to find him guilty as an accessory to the two racketeering murders. He challenges two special factors

---

[1] A redacted Indictment is at Dkt. No. 1771. Approximately forty co-defendants and related defendants entered guilty pleas to related charges. Defendant Anastasio and three co-defendants, each of whom were also found guilty of all charges against them, were the only defendants who sought a trial.

findings of murder made by the jury in relation to the RICO conspiracy on the same grounds.

Defendant Anastasio moves in the alternative for a new trial pursuant to Fed. R. Crim. P. 33 based upon arguments that he was, at most, a mere knowing bystander during planning and preparation for the murders. The Defendant maintains that he did not intentionally aid the principals who committed the murders while intending that the principals commit acts of murder. The Defendant claims not only insufficient proof that he is guilty; he claims he is innocent.

For the reasons stated below, the Court finds the jury's guilty verdicts were supported by legally-sufficient evidence, and were not a miscarriage of justice. Defendant Anastasio's motions pursuant to Rule 29 for a judgment of acquittal and pursuant to Rule 33 for a new trial are therefore denied.

## BACKGROUND

During a trial that last more than five weeks, evidence showed that Defendant Anastasio and the two co-defendants who were tried with him were associates and members of the 10th Street Gang, a violent street gang that operated on the Lower West Side of Buffalo. Members and associates of the Gang engaged in criminal activities that supported the Gang, including violence, threats of violence, and drug-trafficking. Members and associates were involved in Gang-related distribution of heroin, cocaine, crack cocaine, marijuana, and

ecstasy.

Primarily to protect territory that the 10th Street Gang claimed exclusively as its own for drug dealing, and to assert and maintain its relative standing in a loose hierarchy of local street gangs, members and associates of the Gang were involved in murders, attempted murders, and assaults. Members and associates of the Gang routinely possessed firearms during their criminal activities, and evidence showed that firearms were freely shared among Gang members.

The territory of the 10th Street Gang was a neighborhood rife with poverty and violence. The evidence at trial showed that, like most street gangs, the Gang was, in the minds of its members and associates, only partly about crime. The Gang was for some more about social acceptance, support, excitement, and structures that were lacking elsewhere. The Gang held neighborhood parties. It offered a hierarchy of leadership and a clear path to gain approval and respect. One could "put in work" by fighting, committing crimes, or by making sacrifices for Gang members or for the Gang, to earn trust and to build a sense of belonging and higher status.

The 10th Street Gang was a rival of other street gangs, and it had a long-standing violent rivalry with the 7th Street Gang, a similar neighborhood criminal gang which operated nearby on the Lower West Side of Buffalo. At times, deadly violence erupted between the 10th Street Gang and the 7th Street Gang. The murder victims in this case, Brandon MacDonald and Darinell Young, were

murdered in the early-morning hours on April 17, 2006, because they were mistaken for associates of the 7th Street Gang by members and associates of the 10th Street Gang who were retaliating for an earlier mistaken-identity shooting by a 7th Street Gang member.

Evidence during the trial established that Defendant Anastasio was a long-time associate and member of the 10th Street Gang. He conceded his life-long friendships with several admitted Gang members, but he maintained during trial and post-trial argument that the relationships were just friendships.

There was testimony during the trial about Defendant Anastasio with firearms on several occasions at the 10th Street Park, near the intersection of 10th Street and Maryland Street, where Gang members sold drugs. On April 16, 2006, the Defendant was with a group of about 10 to 15 Gang members and associates about a block away from the Park, near West Avenue and Maryland Street, on their way to an afternoon barbecue. Among the Gang members who were present was Douglas Harville, a former member of the 7th Street Gang who had moved into 10th Street Gang territory and been accepted into the Gang. Robert Sanabria, a younger brother of Defendant Anastasio's co-defendant and fellow 10th Street Gang member, Jonathan Delgado, was also present; he was shot in the stomach and seriously injured during a drive-by shooting.

After Robert Sanabria was loaded into an ambulance, Defendant Anastasio and others who had been at the shooting walked a short distance to gather at the

4

10th Street Park.  They were afraid Sanabria might die.  They were upset and angry about the shooting.

Robert Sanabria later identified 7th Street Gang member Luis Medina as the person who shot him to the Buffalo Police Department.  Others who were present, including Douglas Harville, immediately recognized Medina.  The drive-by shooting of Sanabria by Medina was a case of mistaken identity:  Medina meant to shoot a 10th Street Gang member who had recently been involved in an altercation with 7th Street Gang members outside a party.  Sanabria had borrowed a New York Yankees jacket from that 10th Street member.  Medina believed he was shooting the owner of the jacket in retaliation for the earlier incident when he shot Sanabria.

The shooting of Robert Sanabria was the first time in long-running violence between the 7th Street Gang and the 10th Street Gang that 7th Street Gang members had crossed Niagara Street into 10th Street Gang territory to shoot a 10th Street Gang associate or member.  As a result, the shooting had added significance as a challenge and an insult to the 10th Street Gang.

Some of those who gathered at the 10th Street Park in the immediate aftermath of the shooting began to plan retaliation.  Some began seeking firearms they could use to retaliate.

While Defendant Anastasio was at the 10th Street Park, a teenaged couple walked by on the street, and someone confronted the male and demanded to

know if he was associated with the 7th Street Gang. The female said "No," but when the male responded with profanity, the Defendant and other members of the 10th Street Gang attacked him. The couple were stomped on until they were rescued by passers by. After this incident, the gathering at the 10th Street Park broke up and it was agreed that persons who would retaliate against the 7th Street Gang would make their way to an apartment on the corner of Carolina and Niagara Streets, where 10th Street Gang members Sam Thurmond and James Foxworth lived.

Defendant Anastasio knew that 10th Street Gang members and associates who had decided to shoot 7th Street Gang members in retaliation for the drive-by shooting of Robert Sanabria were gathering at Thurmond's and Foxworth's apartment to plan and to allocate the guns that were being collected to use to retaliate. The Defendant went to the apartment, and while he was there, people spoke of killing Luis Medina and shooting other 7th Street Gang members.

Some firearms that were to be used for the retaliation were on the bed in James Foxworth's bedroom. Among them was a .44 caliber handgun with just one shell. Defendant Anastasio had it in his hands when Douglas Harville arrived and sought to claim the gun for his own use in the retaliation. Harville had recognized 7th Street Gang member Luis Medina when Medina shot Robert Sanabria. Harville told the Defendant that he was very close with Sanabria's brother, Jonathan Delgado, that he had been very close to being shot himself,

6

and that he needed to participate in the retaliation. The Defendant refused to give up the gun, and he told Harville that he was going to use the gun to retaliate himself.

Douglas Harville was a higher-ranking member of the 10th Street Gang than Defendant Anastasio. He was among those known to have shot at other persons, and he had respect in the 10th Street Gang for it, while the Defendant had never shot at anyone. After a back-and-forth conversation about who would use the .44 caliber handgun to retaliate, Harville told the Defendant that Harville had to be the one. At that point, the Defendant handed the gun to Harville. Dkt. No 1875, pp. 3281-3283.

Defendant Anastasio had previously sold a shotgun to members of an affiliated street gang known as the Zolo Boys. When four Zolo Boys arrived at Sam Thurmond's and James Foxworth's apartment with the shotgun to join in the retaliation against Luis Medina and the 7th Street Gang, the Defendant told them that he knew how to shoot the gun, and he attempted to buy it back so that he could participate in the retaliation. They refused to sell the gun back to the Defendant.

Later that night, after receiving a tip from co-defendant Matthew Smith about the location of some 7th Street Gang members, 10th Street Gang members and associates who had firearms left Sam Thurmond's and James Foxworth's apartment and rode in cars to the area of 155 Pennsylvania Street

7

and assembled in an nearby alley.  Defendant Anastasio had no firearm and stayed at the apartment, but Douglas Harville, with the .44 caliber handgun the Defendant had handed him, was among them.  They burst from the alley shooting at people on and near the porch of 155 Pennsylvania Street and killed Brandon MacDonald and Darinell Young.  At least five guns were fired during the attack.  Brandon MacDonald was killed by a .380 caliber round that was recovered from his chest.  Darinell Young died after being shot multiple times.  Durell Maddox, Miguel Albaran, Aaron Williams, and Payge Diaz were also shot, but they survived.  Harville had tried to shoot the single-shell .44 caliber handgun that the Defendant had handed to him, but it did not fire even once.

Douglas Harville and some of the other 10th Street Gang members and associates who had shot at the victims near 155 Pennsylvania Street ran back to Sam Thurmond's and James Foxworth's apartment.  It was between 10 and 15 minutes after the shooting, and Defendant Anastasio was still there.  He appeared to be upset and expressed that he wished he had been able to participate in the shooting.

Defendant Anastasio remained a member of the 10th Street Gang through at least 2010, when he was recorded on a video making 10th Street Gang signs with other members of the Gang.  When he was asked about the double murder years later by a New York State Police Investigator, the Defendant admitted that he had seen the .44 caliber handgun in Sam Thurmond's and James Foxworth's

8

apartment the night of the murders, and that it had only one bullet in it when he saw it.

## DISCUSSION

### I. Legal Standards.

#### A. Rule 29 Motion for a Judgment of Acquittal.

Rule 29 of the Federal Rules of Criminal Procedure requires a court to set aside a jury's verdict, and to acquit a defendant despite a verdict of guilty, on any charge for which the evidence is insufficient to sustain the conviction. Fed. R. Crim. P. 29. But a defendant challenging the legal sufficiency of evidence supporting a guilty verdict "bears a heavy burden." *United States v. Si Lu Tian*, 339 F.3d 143, 150 (2d Cir. 2003).

The Second Circuit "emphasize[s] that courts must be careful to avoid usurping the role of the jury." *United States v. Facen*, 812 F.3d 280, 286 (2d Cir. 2016) (quoting *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003)). To this end, a court views all evidence in the light most favorable to the United States, and the United States is credited with every reasonable inference that could have been drawn in its favor. *United States v. Facen*, 812 F.3d 280, 286 (2d Cir. 2016). Thus, the United States receives the benefit of "all inferences . . . [on] issues of credibility in favor of the [jury's] verdict." *United States v. Howard*, 214 F.3d 361, 363 (2d Cir. 2000) (ellipsis added). And the "court examines each piece of evidence and considers its probative value before determining whether it

is unreasonable to find the evidence in its totality, not in isolation, sufficient to support guilt beyond a reasonable doubt." *United States v. Goffer*, 721 F.3d 113, 124 (2d Cir. 2013) (quotation omitted).

Accordingly, a Rule 29 motion can be granted only when evidence that the defendant committed the crime alleged "is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013) (quotations omitted). In even a very close case, if "either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, [the court] must let the jury decide the matter." *United States v. Applins*, 637 F.3d 59, 76 (2d Cir. 2011) (quotation omitted). A motion for a judgment of acquittal simply "does not provide the trial court with an opportunity to substitute its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *Facen*, 812 F.3d at 286 (quotation omitted).

**B. Rule 33 Motion for a New Trial.**

Rule 33 provides that a court may grant a defendant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a); *United States v. James*, 712 F.3d 79, 107 (2d Cir. 2013). A defendant's Rule 33 burden to show that a new trial is warranted is also a heavy burden. *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009). A court may exercise its authority under Rule 33 only "sparingly' and in the most extraordinary circumstances.' " *United States v.*

*Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992) (quotation omitted). "To grant [a] motion [for a new trial], '[t]here must be a real concern that an innocent person may have been convicted.' " *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013) (quotations omitted)).

On the one hand, Rule 33 "confers broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992). A trial court is permitted to weigh the evidence and credibility of witnesses. *Id.* at 1413.

On the other hand, however, "motions for a new trial are disfavored in this Circuit; the standard for granting such a motion is strict . . . ." *United States v. Gambino*, 59 F.3d 353, 364 (2d Cir. 1995) (ellipsis added). While a court has "broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29," *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001), the "court must strike a balance between weighing the evidence and credibility of witnesses and not 'wholly usurp[ing]' the role of the jury." *United States v. Autuori*, 212 F.3d 105, 120 (2d Cir. 2000). "It is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment" under Rule 33. *Sanchez*, 969 F.2d at 1414. A court's rejection of trial testimony does not automatically permit a new trial; the court "must examine the entire case, take into account all facts and circumstances, and make an objective evaluation." *Ferguson*, 246 F.3d at 134.

"The ultimate test is whether letting a guilty verdict stand would be a manifest injustice."  *United States v. Canova*, 412 F.3d 331, 349 (2d Cir. 2005) (quotation omitted).

## II. The Murder-in-Aid-of-Racketeering Counts.

Defendant Anastasio argues that there was insufficient evidence to establish beyond a reasonable doubt that he was guilty of the racketeering murders in violation of 18 U.S.C. § 1959(a) charged in Counts 3 and 4 of the Indictment for the April 17, 2006 murders of Brandon MacDonald and Darinell Young. The five elements of those offenses are:

> . . . (1) that the organization was a RICO enterprise, (2) that the enterprise was engaged in racketeering activity as defined in RICO, (3) that the defendant in question had a position in the enterprise, (4) that that defendant committed or aided and abetted the murder, and (5) that his general purpose in so doing was to maintain or increase his position in the enterprise.

*United States v. Persico*, 645 F.3d 85, 105 (2d Cir. 2011) (citations omitted). Racketeering murder in violation of 18 U.S.C. § 1959(a) can be predicated on state-law murder in aid of racketeering. *United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999).

New York law provides, in relevant part, that "a person is guilty of murder in the second degree when . . . [w]ith intent to cause the death of another person, he causes the death of such person . . . ." N.Y. Penal Law § 125.25(1). New York law further provides that a person is criminally liable as an accessory or

accomplice to an offense committed by another person when, "acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct." N.Y. Penal Law § 20.00. When it comes to criminal culpability under New York law, whether a person was an actual perpetrator of the crime or guilty only as an accessory is irrelevant. *See e.g.*, *People v. Rivera*, 85 N.Y. 2d 766 (1995). There is no distinction between guilt as a principal or as an accessory, as long as the accessory has the same intent as the principal. *Id.*

The Court finds the evidence in this case is legally sufficient to prove Defendant Anastasio's guilt of accessory to murder in violation of N.Y. Penal Law §§ 20.00 and 125.25(1) beyond a reasonable doubt. When the Defendant decided to relinquish the .44 caliber handgun to Douglas Harville after arguing about it with Harville in James Foxworth's bedroom, it was a decision not to participate as a principal in the impending retaliation. But the jury had legally sufficient evidence to support its conclusion that the Defendant's acts of relinquishing his own claim to the gun, and then handing the gun to Harville, were conduct by the Defendant that aided the murderous retaliation at 155 Pennsylvania Avenue for the earlier shooting of Robert Sanabria, and that the Defendant acted with the same intent to trigger the natural and probable consequences of the shooting attack as the principals. *See e.g., People v. Williams*, 123 A.D. 3d 527 (1st Dep't 2014) (conviction for accessory to

attempted murder for handing gun to accomplice after preparing it to fire).

Similarly, the evidence of Defendant Anastasio's discussion with Harville about which of them would participate in the retaliation was legally sufficient to support a conclusion that the Defendant handed over the gun only after deciding Harville had strong reasons and a superior claim in the 10th Street Gang's culture to retaliate for the shooting of Sanabria. Harville was a higher-ranking member of the Gang, he was personally very close with Robert Sanabria's brother, Gang member Jonathan Delgado, and he was very close to having been shot by 7th Street Gang member Luis Medina himself. Accordingly, a reasonable jury could have concluded that, when the Defendant handed the gun to Harville, the Defendant still intended that Gang members, including Harville and other Gang associates would retaliate murderously, and that the Defendant intended that they do so. The evidence was legally sufficient and the Defendant's Rule 29 motion for a judgment of acquittal is denied.

Defendant Anastasio's additonal conduct before the murders, when he attempted to buy back a shotgun he had previously sold to a member of the Zolo Boys, tended to show and confirm that the Defendant shared the principals' intent. Actively seeking a shotgun so that he could personally participate in the impending shootings was probative that the Defendant still sought to participate as a principal shoot the victims.

Defendant Anastasio argues that his conduct consisted only of his mere

14

knowing presence during the planning and preparations for the attack, but accepting that argument would require that the Court overlook reasonable inferences available to the jury based on the testimony that the Defendant relinquished his claim to the .44 caliber handgun, handed it to Douglas Harville, and sought another gun to use. "The government's case need not exclude every possible hypothesis of innocence," *United States v. Martinez*, 54 F.3d 1040, 1042–43 (2d Cir. 1995) (internal quotation marks omitted), to withstand a Rule 29 motion.

Moreover, Defendant Anastasio's conduct shortly after he knew of the shootings, when he appeared upset that he had not been permitted to take a gun and participate in the attack at 155 Pennsylvania Avenue, and expressed that he wished he had been able to participate in the shooting, further tended to show and confirm that the Defendant shared the principal shooters' intent. The evidence showed that when the Defendant decided not to be a principal in the retaliation, he acted as an accessory by handing the gun to Douglas Harville. The Court therefore finds that the jury's verdict of guilty as an accessory was not against the weight of the evidence or a miscarriage of justice. The Defendant fails to carry his heavy burden under Rule 33 to justify the Court usurping the jury's role and granting a new trial.

Fundamentally, Defendant Anastasio seeks to dispute the extent of his involvement in the 10th Street Gang and trial witnesses' testimony about his

conduct in connection with the double murders by impugning the credibility of cooperating witnesses who testified about his involvement and about the events surrounding the murders. However, as stated above with respect to the Defendant's Rule 29 motion, the Court may not weigh the significance of evidence or resolve inconsistent evidence against the jury's verdict. *See e.g.*, *United States v. Cunningham*, 723 F.2d 217, 232 (2d Cir. 1983). The Defendant's efforts to impeach the testimony of witnesses in support of his Rule 29(c) motion fail as a matter of law.

Similarly, the Court found cooperating witnesses Douglas Harville and Nicholas Luciano, the two main witnesses to conduct showing Defendant Anastasio's intent, to be credible witnesses, and the Court declines to usurp the jury's role by granting a new trial pursuant to Rule 33. Examining the entire case, taking into account all the facts and circumstances brought out in the credible evidence, the Court is unable to find that letting stand the murder in aid of racketeering verdicts returned by the jury on Courts 3 and 4 of the Indictment would be a manifest injustice.

### III. The RICO Conspiracy Count.

Defendant Anastasio repeats the grounds for his Rule 29 and Rule 33 motions in challenging the two Special Factor findings of the jury in connection with the guilty verdict on the RICO conspiracy violating 18 U.S.C. § 1962(d) charged in Count 1 of the Indictment. *See* Dkt. No. 1774, p. 8. For the same

reasons as are stated above, the Court concludes the evidence that the Defendant was an accessory to the murders was legally sufficient, and the Special Factors findings were not a manifest injustice.

## CONCLUSION

For the foregoing reasons, the motions of Defendant Domenico Anastasio for a judgment of acquittal pursuant to Fed. R. Crim. P. 29(c) on Counts 3 and 4 of the Indictment charging him with murders in aid of racketeering in violation of 18 U.S.C. § 1959(a), and to set aside special findings of the same two murders in relation to his role in a RICO conspiracy in violation of 18 U.S.C. § 1962(d), or for a new trial on all of three Counts pursuant to Fed. R. Crim. P. 33 are denied. Sentence will be imposed December 7, 2017, at 12:30 p.m.

**SO ORDERED.**

_S/Richard J. Arcara_
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated: October 30, 2017