UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

          v.                                      **DECISION AND ORDER**
                                                  09-CR-331-A

DOMENICO ANASTASIO,

                    Defendant.

### I.    BACKGROUND

The Court presumes the parties' familiarity with the procedural history of this case, which is outlined in the Second Circuit's decision in *United States v. Delgado*, 972 F.3d 63, 74 (2d Cir. 2020), *as amended* (Sept. 1, 2020), *cert. denied sub nom. Anastasio v. United States*, No. 20-6381, 2021 WL 78428 (U.S. Jan. 11, 2021), as well as prior proceedings before this Court, as well as the record, the arguments raised, and issues that are under review.

Briefly stated, following a jury trial, Defendant Domenico Anastasio was convicted of three crimes: one count of RICO conspiracy, under 18 U.S.C. §1962(d), which included findings on two "special factors" that, as part of such RICO conspiracy, Defendant intentionally caused the deaths of Brandon MacDonald and Darinell Young in violation of New York Penal Law §§125.25(1) and 20.00 (the so-called "murder enhancements"); and two counts of murder in aid of racketeering, under 18 U.S.C. §§1959(a)(1) and (2) (VCAR murder counts).  Following such

convictions, this Court sentenced Defendant on each count to concurrent terms of imprisonment of life.  (Dkt. No. 2191).

On appeal, the Second Circuit affirmed the Defendant's conviction for RICO conspiracy, while reversing the Defendant's convictions for two VCAR murder counts as well as the murder enhancements and remanded the case for resentencing. *See United States v. Delgado*, 972 F.3d 63, 74 (2d Cir. 2020), *as amended* (Sept. 1, 2020), *cert. denied sub nom. Anastasio v. United States*, No. 20-6381, 2021 WL 78428 (U.S. Jan. 11, 2021).  Specifically, the Circuit noted that Defendant did not personally participate in the shooting of MacDonald and Young and "did nothing to further the criminal act or contribute toward its success." *United States v. Delgado*, 972 F.3d at 78 (quotations and alterations omitted). Absent "proof that [] defendant performed *some* act that 'directly facilitated or encouraged' the commission of a substantive crime [i.e., murder]," *see, United States v. Delgado*, 972 F.3d at 75, the Circuit determined that Defendant "did not aid or abet the two murders as a matter of federal law" nor "act as an accomplice within the meaning of New York Penal Law." *United States v. Delgado*, 972 F.3d at 79.

As a result, the Court reversed Defendant's convictions under both the VCAR Murder Counts and the murder enhancements of the RICO conspiracy count.  In reversing the VCAR counts and the murder enhancements, the statutory maximum term of imprisonment that Defendant is facing at resentencing has been reduced from life to twenty years. *See*, 18 U.S.C. §1963(a).

Following the remand, a Revised Presentence Investigation Report (PSR) was prepared which determined that with a Total Offense Level of 43 and a Criminal History Category of I, Defendant faced a Guideline's "range" of imprisonment of 240 months. (Dkt. No. 2344, ¶100).  While the Government agreed with the PSR (Dkt. No. 2346), Defendant objected to the PSR's conclusion that his relevant conduct ought to include: the murders of MacDonald and Young; the attempted murders of D.M., P.D., A.W., and M.A.; as well as drug equivalency of 2,023 kilograms of marijuana. (Dkt. No. 2321, ¶4).[1]  Both the Government (Dkt. Nos. 2354, 2367) and Defendant (Dkt. Nos. 2362, 2388, 2400) filed memoranda, and oral argument was held before the Court (Dkt. No. 2410).

**The Conspiracy and Defendant's Role in It:**

The RICO conspiracy count of which Defendant was convicted included as its objects: multiple acts involving murder; robbery; conspiracy to distribute, distribution of, and use of premises to distribute, controlled substances; and witness tampering. (Dkt. No. 408, p.11). The Indictment further indicated that the means by which such objects were accomplished included: the distribution of quantities of cocaine,

---

[1] While the Defendant expressed objections to the PSR's inclusion of the attempted murders and drug quantity as part of his relevant conduct, his objections with respect to each are conclusory.  With regard to the attempted murders, he simply argues that he was never charged or convicted of either attempted murder or aiding and abetting attempted murder and that such acts are not "within the scope of [his] jointly undertaken criminal activity." (Dkt. No. 2321, p.7). With regard to drug quantity, Defendant argues that the trial testimony does not support a calculated converted drug weight of 2,023 kilograms of marijuana. (Dkt. No. 2321, p.7). In view of the fact that, this Decision and Order directs that an updated PSR be prepared, this Court, at this time, declines to decide Defendant's undeveloped objections regarding the attempted murders and drug quantity.

cocaine base, marijuana, heroin, and ecstasy; acts of violence and shootings, including acts involving murder, against rival gang members, associates of rival gang members, and other individuals and other persons involved in the distribution of controlled substances on the West Side of Buffalo; the use, carrying, and possession of firearms; the intimidation of victims and rivals (Dkt. No. 408, p.12-13).

At trial, the proof established that in about 2000, Defendant, while a teenager, became a 10th Street gang member. (Dkt. No. 1870, pp. 7, 17-18). The 10th Street gang was in a street war with the rival 7th Street gang. Defendant and the other members of the 10th Street gang were expected to retaliate, against members of the rival 7th Street gang and others for acts of violence committed against 10th Street gang members. The proof further established that the 10th Street gang maintained an arsenal of firearms, and that Defendant was known—amongst other 10th Street gang members—to be someone who possessed firearms.  Defendant himself had a .25 caliber handgun at his house which he stashed in the 10th Street Park (Dkt. No. 1861, pp. 81-82; Dkt. No. 1865, pp. 42-47). Defendant also purchased a .20-gauge shotgun from Kyle (a/k/a "Canilla Boy"), one of the 10th Street gang's drug customers. (Dkt. No. 1861, pp.63-65).  Defendant would bring the .20-gauge shotgun to the park and to a house on a 10th Street where gang members sold crack (Dkt. No. 1861, p.63; Dkt. No. 1865, pp. 42-47).  At the park, Defendant acted as a lookout for other 10th Street gang members who were selling drugs there, and the guns were used for protection. (Dkt. No. 1865, pp. 41-47).  Defendant also sold marijuana himself. (Dkt. No. 1870, pp. 97-98). Defendant eventually sold the

shotgun to the Zolo Boys, and on the day of the MacDonald and Young murders, he tried to buy it back. (Dkt. No. 1862, p. 47; Dkt. No. 1865, p. 105).  Furthermore, the evidence at trial also showed that earlier on the day of the murders, Defendant was present when a fellow 10th Street gang member, Kiki, was shot by a 7th Street gang member on the corner of West and Maryland. (Dkt. No. 1865, pp. 77-85).  Following such shooting, Defendant and other 10th Street members jumped, beat, and kicked Stephanie Maldonado and her boyfriend because her boyfriend was suspected of being from 7th Street. (Dkt. No. 1865, pp. 89-93).

## II.   DISCUSSION

The gravamen of Defendant's position is that the murders of MacDonald and Young ought not to be included as part of the Defendant's relevant conduct since the Second Circuit expressly determined that the evidence was insufficient to convict Defendant of either the murder enhancements as part of the RICO conspiracy or the VCAR murder counts involving such individuals.

For the reasons which follow, the Court determines that, although the evidence—in view of the lack of proof that Defendant's conduct actually contributed to the success of the murders of MacDonald and Young committed by other 10th Street members—was insufficient to convict him as an accomplice to such murders, the preponderance of the evidence establishes that: (1) such murders fell within the scope of the RICO conspiracy to which Defendant agreed; (2) were in furtherance of that conspiracy; and (3) were reasonably foreseeable to Defendant.  As a result, this

Court concludes that such murders are relevant conduct to Defendant's RICO conspiracy conviction.

### A. Legal Standard

When a defendant undertakes criminal activity jointly with others, in this case, through a RICO conspiracy, he is held accountable for "all reasonably foreseeable acts and omissions of others that were: (i) within the scope of the jointly undertaken activity, (ii) in furtherance of that jointly undertaken criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B).  "Because a count may be worded broadly and include the conduct of many participants over time, the scope of the 'jointly undertaken criminal activity' is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant." U.S.S.G. § 1B1.3 cmt. n. 3(B).  This is because "the emphasis in substantive conspiracy liability is the scope of the entire conspiracy," while "the emphasis under [the Guidelines] is the scope of the *individual defendant's* undertaking." *United States v. Spotted Elk*, 548 F.3d 641, 673-74 (8th Cir. 2008) (emphases in original). Thus, in a given case, "[t]he scope of conduct for which a defendant can be held accountable under the sentencing guidelines [may be] significantly narrower than the conduct embraced by the law of conspiracy." *United States v. Perrone*, 936 F.2d 1403, 1416 (2d Cir. 1991); *see United States v. Rigo*, 649 F. App'x 107, 108 (2d Cir. 2016); U.S.S.G. § 1B1.3 cmt. n. 1.

As the commentary to the relevant section of the Guidelines explains, in determining "the scope of the criminal activity the particular defendant agreed to jointly undertake," the Court:

> [M]ay consider any explicit or implicit agreement fairly inferred from the conduct of the defendant and others. Accordingly, the accountability of the defendant for the acts of others is limited by the scope of his or her agreement to jointly undertake the particular criminal activity. Acts of others that were not within the scope of the defendant's agreement, even if those acts were known or reasonably foreseeable to the defendant, are not relevant conduct for sentencing purposes.

U.S.S.G. § 1B1.3 cmt. n. 3(B); *see also United States v. Johnson*, 378 F.3d 230, 238 (2d Cir. 2004) (mere knowledge of murder committed by coconspirator insufficient even where it was within scope of overall operation; murder must be within scope of specific conduct and objectives agreed to by defendant).

### B. Legal Analysis

Having presided over the trial in this action, the Court determines that the preponderance of the evidence presented at trial establishes that although Defendant did not personally participate in the shootings of MacDonald and Young, such shootings were committed by other 10th Street gang members. The evidence further establishes that the shootings were motivated by retaliation for acts of violence committed by rival members of the 7th Street gang upon members of the 10th Street gang. Finally, the evidence also establishes that the commission of such shootings fell within the scope of defendant's agreement with his fellow gang members. In fact, the proof at trial established that on the very day of such murders,

7

Defendant himself personally participated in an assault of two other individuals, a female, and her boyfriend who Defendant and his fellow 10th Street gang members believed was a rival member of the 7th Street gang.  Such assault was motivated by retaliation for acts of violence believed to be committed by 7th Street gang members upon members of the 10th Street gang.  In fact, the very same acts of violence that motivated the murders. That such violence did not involve firearms hardly supports the position that violence with firearms were beyond the scope of defendant's agreement with his fellow 10th Street gang members. To the contrary, the evidence establishes that Defendant personally acquired and possessed firearms to protect himself and fellow members of the 10th Street gang.  Thus, the Court determined that the shooting homicides of MacDonald and Young involved an act which was within the specific conduct (shootings and assault) and objectives (retaliation against members of a rival gang) that were agreed to by Defendant.

The Second Circuit's decision in *Johnson*, a case relied upon by defendant (Dkt. No. 2321. Pp. 4-5), is factually distinguishable and provides an illustration of what a murder that is "beyond the scope" of a charged defendant's agreement looks like.  By juxtaposing the conduct of Defendant here with that of the defendants in *Johnson*, the case, in fact, supports this Court's determination that the murders of MacDonald and Young were within the scope of Defendant's agreement.

In *Johnson*, three defendants were convicted of conspiring to commit extortion in violation of the Hobbs Act, 18 U.S.C. § 1951. The trio were members of a labor coalition named Brooklyn Fight Back ("BFB"), that claimed to use "time-

honored tactics of the labor movement to obtain jobs for members of minority groups on construction projects.  Contrary to BFB's claims of honorable means and ends, the jury found that, from 1990 to 1998, defendants' participation in BFB included extorting money and jobs, including the proverbial 'no-show' jobs, from contractors at construction sites in New York City." *United States v. Johnson*, 378 F.3d at 234.  The overt acts of each defendant in furtherance of the conspiracy to commit involved each defendant's efforts to extort money from different construction companies.  *Id*.

During defendants' participation in the extortion conspiracy, another BFB member and co-conspirator, Mulder, killed Erick Riddick, "a member of a rival 'labor coalition,' during a confrontation at a Queens construction site. None of the defendants was convicted by the jury of any charge relating specifically to the Riddick murder." *Id*. On appeal, the Second Circuit vacated all three defendants' sentences on the grounds that the District Court, in including Riddick's murder as part of each defendant's relevant conduct, "had not satisfied our Circuit's standard for holding a defendant liable at the sentencing phase for the relevant conduct of a co-conspirator." *Id*., at 235.  As the Court explained,

> [I]n order to consider the Riddick murder as relevant conduct, the District Court was required to make two particularized findings under the so-called *Studley* prongs: (1) that the scope of the activity to which the defendant agreed was sufficiently broad to include the relevant, co-conspirator conduct in question; and (2) that the relevant conduct on the part of the co-conspirator was foreseeable to the defendant.

*United States v. Johnson*, 378 F.3d at 235–36 (alterations and internal quotations omitted) (citing *United States v. Studley*, 47 F.3d 569, 574 (2d Cir.1995)); *see also*

9

*United States v. Getto*, 729 F.3d 221, 234 (2d Cir. 2013) ("Before sentencing a defendant based on the conduct of coconspirators, ... a district court is required to make two particularized findings: (1) that the scope of the activity to which the defendant agreed was sufficiently broad to include the relevant, coconspirator conduct in question; and (2) that the relevant conduct on the part of the coconspirator was foreseeable to the defendant." (alterations and internal quotation marks omitted)).

While the scope of the activity to which *Johnson* defendants agreed <u>clearly did not</u> include acts of violence which potentially could (and did) lead to murder, the scope of the activity to which the Defendant in this case agreed <u>clearly did</u>. As such this Court determines that notwithstanding the fact that the Defendant did not commit any *actus reus* in furtherance of the murders of MacDonald and Young, their shooting—in retaliation for acts of violence committed by members of a rival gang against members of the 10th Street gang—was within the scope of Defendant's agreement with his fellow 10th Street gang members and was clearly undertaken in furtherance of their jointly undertaken criminal activity. U.S.S.G. § 1B1.3(a)(1)(B).

Having determined that the murders were both within the scope of Defendant's agreement with his fellow 10th Street gang members and undertaken in furtherance of their jointly undertaken criminal activity, the Court must next consider whether such murders were reasonably foreseeable in connection with such activity. U.S.S.G. § 1B1.3(a)(1)(B); *see*, *Studley*, 47 F.3d at 573-74 (these determinations must be made sequentially, as the sentencing court must "'first determine the scope

of the criminal activity the particular defendant agreed to jointly undertake' ... before the issue of foreseeability, prong two, is reached.")(quoting U.S.S.G. § 1B1.3 cmt. n. 2)).  While a defendant's awareness of the scope of the overall operation is—by itself—insufficient to hold him accountable for the activities of the entire operation, "the 'relevant inquiry is what role the defendant agreed to play in the operation, either by an explicit agreement or implicitly by his conduct.'" *United States v. Rigo*, No. 13 CR. 897 (RWS), 2017 WL 213064, at *3–4 (S.D.N.Y. Jan. 17, 2017)(quoting *Studley*, 47 F.3d at 575 (citing U.S.S.G. § 1B1.3, cmt. n. 2 illus.(c)(7))).

Here, such foreseeability is clear. In fact, as part of its decision, the Second Circuit expressly recognized, "[a]lthough Anastasio's actions at the apartment where the murders were planned did not render him an accomplice to the murders, his conduct there certainly provides a reasonable basis for inferring that Anastasio knew about, and agreed to, the general criminal objective of the 10th Street Gang." *United States v. Delgado*, 972 F.3d at 80 (quotations omitted). Moreover, the Court of Appeals explicitly stated that, "a rational jury could conclude beyond a reasonable doubt that Anastasio wished to bring about the murders of Young and McDonald—an entirely foreseeable consequence of the retaliatory shooting." *United States v. Delgado*, 972 F.3d at 74 (quotation and alterations omitted).  With the Circuit Court endorsing the fact that a fact-finder could rationally conclude that the trial proof supported the conclusion that such foreseeability had been established beyond a reasonable doubt, this Court has little difficulty in determining its existence by a preponderance.

For the foregoing reasons, this Court determines that notwithstanding his acquittal for the shooting deaths of Young and MacDonald, Defendant should be held liable for such deaths at sentencing. Because a preponderance of the evidence supports the conclusion that such murders were within the scope and in furtherance of Defendant's jointly undertaken activity, and reasonably foreseeable to him in connection with that criminal activity, *United States v. Pica*, 692 F.3d 79, 88 (2d Cir. 2012). ("[a] district court may treat acquitted conduct as relevant conduct at sentencing, provided that it finds by a preponderance of the evidence that the defendant committed the conduct."), such murders should properly be included as part of Defendant's relevant conduct to his participation in the RICO conspiracy.

### III.  CONCLUSION

For the foregoing reasons, the Court determines that the murders of Brandon MacDonald and Darinell Young, committed by Defendant's coconspirators, are relevant conduct to Defendant's participation in the RICO conspiracy of which he has been convicted. The Court directs that an updated Presentence Investigation be prepared and a sentencing date set.

**IT IS SO ORDERED.**

*s/Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:  February 6, 2024
        Buffalo, New York